UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARRISON MA, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br><br>Defendant. | No. 2:25-cv-01235<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>King County Superior Court<br>Case No. 25-2-16073-4 |

Defendant Nike, Inc. ("**Nike**" or "**Defendant**") removes to this Court the above-entitled action from the Superior Court of the State of Washington in and for King County to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 because (1) complete diversity exists between the parties, and (2) removal is proper pursuant the Class Action Fairness Act of 2005 ("CAFA"). Nike denies the allegations and relief sought, and files this Notice without waiving any defenses, exceptions, or obligations that may exist in its favor. Nike will provide additional evidence to support the allegations of this pleading as required in the event of a challenge to this Court's jurisdiction.

NOTICE OF REMOVAL (2:25-cv-01235) - 1

**PROCEDURAL BACKGROUND**

1. On May 29, 2025, Plaintiff Harrison Ma filed this putative class action in King County Superior Court (the "Complaint"). A true and correct copy of the Complaint is attached as **Exhibit 1**.

2. On June 2, 2025, Plaintiff served copies of the Summons and Complaint on Nike's registered agent. Copies of these documents are attached as Exhibit A to the Declaration of Vanessa Soriano Power.

3. Plaintiff alleges that Nike violated Washington's Commercial Electronic Mail Act ("CEMA") and the Consumer Protection Act ("CPA") by sending marketing emails to Washington consumers with false and misleading subject lines. *See* Compl. ¶¶ 4, 35-55. Plaintiff seeks statutory damages, injunctive relief, and attorneys' fees and costs. *Id*. ¶ 96; *see also id.* ¶ 86.

4. As alleged in the Complaint, Plaintiff is a citizen of Washington and brings this action on behalf of citizens of Washington. *Id*. ¶¶ 9, 70.

**TIMELINESS OF REMOVAL**

5. Plaintiff served the registered agent for Nike on June 2, 2025. Because this Notice is filed within thirty days of service, it is timely under 28 U.S.C. §§ 1446(b) and 1453.

**NOTICE OF REMOVAL**

6. As required by 28 U.S.C. §1446(b), Defendant is filing this Notice of Removal within thirty (30) days of receipt and service of the Complaint. Defendant is contemporaneously serving a copy of this Notice upon all parties and the Clerk of the King County Superior Court, with instructions to proceed no further unless this case is remanded.

**VENUE**

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because this District and Division embrace King County, Washington, the venue where this action is pending.

NOTICE OF REMOVAL (2:25-cv-01235) - 2

129293801.2 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

**JURISDICTION**

**A.  Diversity Jurisdiction Under 28 U.S.C. § 1441(c)**

8.  This is a civil action over which this Court has jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 for the named Plaintiff, exclusive of interest and costs.

9.  Federal courts may exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the claims of the proposed class members where complete diversity of citizenship exists between the named parties and where the named plaintiff's claim satisfies the amount-in-controversy requirement of $75,000. *See Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005); *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002) (acknowledging rule that "nonnamed class members cannot defeat complete diversity" because the "[e]ase of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction"). Here, there is complete diversity between Plaintiff Ma and Nike, and Plaintiff Ma's claims meet the amount-in-controversy requirement of $75,000, as detailed below. Thus, this Court has supplemental jurisdiction over the proposed class members' claims.

10.  **Complete diversity exists.**  An individual is a citizen of the state in which he is domiciled. *See Kanter v. Warner-Lambert, Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). "'[T]he actual fact of residence and a real intention of remaining there, as disclosed by [a party's] entire course of conduct, are the controlling factors in ascertaining his domicile.'" *Little v. Grant County Hosp. Dist. # 1*, No. 2:18-cv-00292-SAB, 2020 WL 1433526, at *2 (E.D. Wash. Mar. 23, 2020) (quoting *Freeman v. Northwest Acceptance Corp.*, 745 F.2d 553, 556 (5th Cir. 1985)) (brackets in original).

NOTICE OF REMOVAL (2:25-cv-01235) - 3

129293801.2 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

11.     Plaintiff alleges that he resides in King County, Washington. Compl. ¶ 9. Plaintiff also seeks to represent a class of "Washington citizens." *Id*. ¶ 70. Accordingly, and upon information and belief, Plaintiff was and is domiciled in Washington and is a citizen of the State of Washington for purposes of removal.

12.     For purposes of establishing diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

13.     Nike is organized under the laws of the State of Oregon. Compl. ¶ 10. Nike's principal place of business and corporate headquarters is located in Beaverton, Oregon. *Id*. Nike is not and never has been organized under the laws of the State of Washington, nor are its headquarters, executive officers, or offices based in Washington. Nike is thus a citizen of the State of Oregon for purposes of removal.

14.     There is complete diversity pursuant to 28 U.S.C. §§ 1332(a) and 1441(b) because this is a civil action between citizens of different states.

15.     **The amount-in-controversy for Plaintiff's claims exceeds $75,000**. The amount in controversy is also satisfied because the Complaint seeks an amount in excess of $75,000 for Plaintiff. Specifically, Plaintiff requests (1) statutory damages[1] in the amount of $500 for each

---

[1] Defendant disputes that Plaintiff can seek statutory damages under the terms of CEMA and the Consumer Protection Act ("CPA"). Nevertheless, because this is a disputed issued, Plaintiff's claims for statutory damages are appropriately included in the amount in controversy.

NOTICE OF REMOVAL (2:25-cv-01235) - 4

1  alleged violation of CEMA pursuant to RCW 19.190.020(1)(b); (2) treble damages pursuant to
2  RCW 19.86.090; and (3) costs and attorneys' fees in connection with this litigation, pursuant to
3  RCW 19.86.090.

4      16.    A removing party need only show a plausible allegation that the amount in
5  controversy exceeds the jurisdictional threshold. *Academy of Country Music v. Continental*
6  *Casualty Co.*, 991 F.3d 1059, 1068-70 (9th Cir. 2021) (citing *Dart Cherokee Basin Operating Co.,*
7  *LLC v. Owens*, 574 U.S. 81, 89 (2014)); *see also* LCR 101(a) (permitting removal "if a reasonable
8  person, reading the complaint of the plaintiff, would conclude the plaintiff was seeking damages
9  in an amount greater than the minimum jurisdictional amount of this court"). The amount in
10 controversy may include actual damages, punitive damages, and attorney's fees authorized by
11 contract or statute. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007);
12 *see also Trepanier v. Progressive Direct Ins. Co.*, No. C12-0987-JCC, 2012 WL 12882865, at *2
13 (W.D. Wash. Sept. 19, 2012) ("[T]he amount in controversy includes not just actual damages, but
14 also statutorily authorized attorneys' fees and treble damages.").

15     17.    According to Plaintiff, an injury occurs each time an email containing false or
16 misleading information in the subject line is sent to him. *See* Compl. ¶¶ 23-25; 66-67. Plaintiff
17 alleges that he received ten emails from Nike between November 17, 2024 and December 7, 2024.
18 *Id*. ¶¶ 67; 47-54. Plaintiff claims that the emails he received on November 30 and December 1
19 contained false or misleading subject lines. *Id*. ¶¶ 50, 52. Plaintiff further identifies a list of five
20 additional emails from 2023 and 2022 that he alleges contained false or misleading subject lines
21 (for a total of seven emails with allegedly false or misleading subject lines). *See* Compl. Ex. A.
22 Thus, through his Complaint, Plaintiff identifies fifteen emails that may be at issue in his claim,
23 and Plaintiff has not committed to limiting his claims to the seven emails attached to his Complaint.
24 Rather, he alleges that Nike sends on average 475 separate marketing emails per year between
25 2014 and 2024 (or 1.3 per day) to a mailing list numbering in the thousands. *Id*. ¶ 57. Thus, if
26 Plaintiff were to seek statutory damages for even 150 emails (at $500 per email), that alone

NOTICE OF REMOVAL (2:25-cv-01235) - 5

1  (without accounting for treble damages, injunctive relief, or attorneys' fees) would exceed the $75,000 threshold.

2  18.  Treble damages sought under the CPA also are included in the calculation of damages for diversity jurisdiction. *See*, *e.g.*, *Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F.Supp.3d 856, 871 (W.D. Wash. Feb. 25, 2021). Here, Plaintiff seeks treble damages, which are capped at $25,000. Compl. ¶ 96. Thus, the amount-in-controversy threshold is met even if Plaintiff seeks only statutory damages of $500 per email for 100 emails sent within the four-year period preceding the filing of the Complaint (a limit to which Plaintiff has not committed), plus the total available amount of treble damages.

19.  Setting aside Plaintiff's potential award of statutory and treble damages, Plaintiff's potential recovery in attorneys' fees alone will, upon information and belief, exceed $75,000. "In determining the amount in controversy, the court may consider damage requests and awards in similar cases." *Ballard v. Corinthian Colleges, Inc.*, No. 06-5256-FDB, 2006 WL 1806190, at *2 (W.D. Wash. June 28, 2006) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). In separate litigation, attorneys from the law firms representing Plaintiff indicated that their hourly rates for partners range from $500 - $1,308 per hour. *See infra* ¶ 34. At these rates, Plaintiff's counsel would only need to incur approximately 60 to 150 hours of attorney time (not even accounting for other fees and costs) to exceed $75,000 in attorney's fees. Thus, if this case were to proceed through trial, Plaintiff's attorney's fees would, upon information and belief, far exceed the $75,000 threshold alone.

20.  For the foregoing reasons, the amount in controversy requirement is easily satisfied because the named Plaintiff's demand seeks statutory damages, treble damages, and attorneys' fees, which place more than $75,000 in controversy.

21.  Based on the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C § 1332, and this action is properly removed to this Court.

NOTICE OF REMOVAL (2:25-cv-01235) - 6

1  (without accounting for treble damages, injunctive relief, or attorneys' fees) would exceed the $75,000 threshold.

2  18.  Treble damages sought under the CPA also are included in the calculation of damages for diversity jurisdiction. *See*, *e.g.*, *Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F.Supp.3d 856, 871 (W.D. Wash. Feb. 25, 2021). Here, Plaintiff seeks treble damages, which are capped at $25,000. Compl. ¶ 96. Thus, the amount-in-controversy threshold is met even if Plaintiff seeks only statutory damages of $500 per email for 100 emails sent within the four-year period preceding the filing of the Complaint (a limit to which Plaintiff has not committed), plus the total available amount of treble damages.

19.  Setting aside Plaintiff's potential award of statutory and treble damages, Plaintiff's potential recovery in attorneys' fees alone will, upon information and belief, exceed $75,000. "In determining the amount in controversy, the court may consider damage requests and awards in similar cases." *Ballard v. Corinthian Colleges, Inc.*, No. 06-5256-FDB, 2006 WL 1806190, at *2 (W.D. Wash. June 28, 2006) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). In separate litigation, attorneys from the law firms representing Plaintiff indicated that their hourly rates for partners range from $500 - $1,308 per hour. *See infra* ¶ 34. At these rates, Plaintiff's counsel would only need to incur approximately 60 to 150 hours of attorney time (not even accounting for other fees and costs) to exceed $75,000 in attorney's fees. Thus, if this case were to proceed through trial, Plaintiff's attorney's fees would, upon information and belief, far exceed the $75,000 threshold alone.

20.  For the foregoing reasons, the amount in controversy requirement is easily satisfied because the named Plaintiff's demand seeks statutory damages, treble damages, and attorneys' fees, which place more than $75,000 in controversy.

21.  Based on the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C § 1332, and this action is properly removed to this Court.

NOTICE OF REMOVAL (2:25-cv-01235) - 6

**B. Jurisdiction Under the Class Action Fairness Act ("CAFA")**

22. Separately, this action is removable to this Court, and this Court has jurisdiction, because this suit satisfies all of the requirements for removal under CAFA, 28 U.S.C. §§ 1332(d), 1441(a), 1453, and 1446. This is a putative class action with more than 100 class members, there is minimal diversity, and the total amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (6). Further, removal to this judicial district and division is proper under 28 U.S.C. § 1441(a), as this District and Division embrace King County, Washington, the venue identified in Plaintiff's Complaint. Nike denies Plaintiff's factual allegations and denies that Plaintiff—or the class he purports to represent—is entitled to the relief requested in the Complaint. Nevertheless, based on Plaintiff's allegations in the Complaint and Prayer of Relief, all requirements for jurisdiction under CAFA have been met in this case.

23. **Minimal diversity exists.** To establish CAFA's diversity requirement, a party seeking removal must establish that minimal diversity exists, *i.e.*, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). As discussed above, Plaintiff Ma is a citizen of Washington and Defendant Nike is a citizen of Oregon for purposes of diversity jurisdiction. *See supra* ¶¶ 10-13. Minimum diversity of citizenship exists for this Court to have original jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

24. **Plaintiff alleges that the putative class exceeds 100 members.** The action qualifies as a "class action" for purposes of CAFA because it was filed as a class action pursuant to Washington law, namely Washington Civil Rule 23.[2] 28 U.S.C. § 1332(d)(1)(B). CAFA's requirement that the proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because Plaintiff himself alleges in his Complaint that "the Class is estimated to contain thousands of members." Compl. ¶ 73.

---

[2] Defendant denies that class certification is appropriate and reserves the right to contest class certification at the appropriate time.

NOTICE OF REMOVAL (2:25-cv-01235) - 7

25. **The Amount in Controversy Exceeds $5,000,000.**[3] Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(6). A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee*, 574 U.S. at 87 (quoting 28 U.S.C. § 1446(a)). This short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal quotations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

26. The ultimate inquiry is what amount the complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015) (applying the directive from *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938) to "first look to the complaint in determining the amount in controversy"); *see also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to

---

[3] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. Defendant refers to specific damages estimates and refers to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims lacks merit and that Defendant is not liable to Plaintiff or any putative class member for any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations found in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Nike's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

NOTICE OF REMOVAL (2:25-cv-01235) - 8

use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved."). The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)); *see also LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy.").

27. "As is inescapable at this early stage of the litigation, the removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceed $5 million,' so long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (quoting *LaCross*, 775 F.3d at 1201); *see also Kleinsasser v. Progressive Direct Ins. Co.*, No. 17-5499-BHS, 2018 WL 3471185, at *11 (W.D. Wash. July 19, 2018) (finding that the defendant's "overall chain of reasoning and assumptions are reliable" even if the proposed model "overestimates some individual damages" and concluding that the removing defendant met its burden to establish that the amount in controversy exceeds $5 million).

28. In assessing the amount in controversy, a court must "'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012) (*citing Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). While Nike denies Plaintiff's factual allegations and denies that he or the putative

NOTICE OF REMOVAL (2:25-cv-01235) - 9

class he seeks to represent are entitled to any of the relief for which Plaintiff has prayed, it is clear that the allegations within the Complaint put more than $5 million into controversy when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

29. Plaintiff alleges that Nike has "bombarded Plaintiff Ma with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and harassment under CEMA." Compl. ¶ 66. Plaintiff identifies seven emails that he contends employed false and misleading subject lines in Exhibit A and seeks to represent a class of "thousands of members" that allegedly received these seven emails. *Id*. ¶¶ 55, 70, 73 & Ex. A. Plaintiff further alleges the volume of Nike's marketing emails averaged approximately 1.3 emails per day between 2014 and 2024. *Id*. ¶ 57. Plaintiff seeks statutory damages in the amount of $500 for each violation of CEMA pursuant to RCW 19.190.020 *and* treble damages pursuant to RCW 19.86.090. Per these allegations, the amount-in-controversy in this case exceeds $5,000,000.

30. For example, assuming that the seven emails identified by Plaintiff in the Complaint are at issue[4], a proposed class of 1,450 individuals seeking statutory damages of $500 per email exceeds the amount in controversy based on statutory damages alone. Such a purported class appears to be less than the "thousands of members" Plaintiff estimates the class contains. Moreover, assuming the proposed class is 1,000 potential class members, then, if each proposed class member received 10 or more allegedly deceptive marketing emails (less than the number of emails Plaintiff alleges he received in the Complaint), then the amount in controversy based on statutory damages alone meets the $5,000,000 threshold. Neither of these calculations take into account Plaintiff's demand for treble damages under RCW 19.86.090 on behalf of the putative class. If treble damages are available to Plaintiff, a potential class of 500 individuals who each

---

[4] Plaintiff has not limited the proposed class or his claims to just these seven identified emails. Rather, he claims that the seven identified emails are merely the "commercial emails whose subject lines contain false or misleading statements that investigation has uncovered to date." Compl. ¶ 55.

NOTICE OF REMOVAL (2:25-cv-01235) - 10

1  received the seven emails containing allegedly false or misleading subject lines would exceed the $5,000,000 amount in controversy threshold. Plaintiff seeks to represent a putative class that is larger than 500 putative members. *See* Compl. ¶ 73.

31. Plaintiff also seeks to recover attorneys' fees pursuant to RCW 19.86.090. *See* Compl. ¶ 96. Attorneys' fees are properly included in determining the amount in controversy. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"); *Dawsey v. Travelers Indem. Co.*, No. 15-cv-01588-RBL, 2015 WL 4394545, at *3 (W.D. Wash. July 16, 2015) (allowing attorneys' fees of 25% of compensatory damages to be included in CAFA amount in controversy calculation). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

32. Nike denies Plaintiff's claim for attorneys' fees. Nonetheless, for purposes of removal, the Ninth Circuit has held that future fee estimates can be based on "customary rates and proper fees," and that 'a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Fritsch*, 899 F.3d at 795, 796 n.6. Courts in this district have used the 25% benchmark to calculate potential fees for purposes of CAFA amount in controversy. *See Dawsey*, 2015 WL 4394545, at *2-3 (adding 25 percent benchmark to estimated common fund value); *Berry v. Transdev Servs., Inc.*, No. C15-1299RAJ, 2016 WL 11261499, at *4 (W.D. Wash. Jan. 11, 2016) ("Courts also recognize that two possible benchmarks for estimating such attorneys' fees: an estimate under a loadstar calculation or using a 25% common fund benchmark."). Courts therefore include a potential 25 percent fee award in the CAFA amount in controversy.

33. Even though Nike has already demonstrated by a preponderance of the evidence that the amount in controversy for a purposed class that is "estimated to contain thousands of

NOTICE OF REMOVAL (2:25-cv-01235) - 11

members" exceeds $5,000,000, *supra* ¶¶ 29-30, the inclusion of attorneys' fees would further increase the amount in controversy above the $5,000,000 threshold. Indeed, a proposed class of 1,000 potential class members who received the seven allegedly offending emails could seek statutory damages of $3,500,000. If those damages were trebled, the potential statutory and treble damages would exceed $10,500,000. A 25 percent fee award of $10,500,000 would be $2,625,000. Accordingly, such damages potentially available to the putative class when adopting Plaintiff's most conservative allegations may exceed $13,000,000.

34. Even if the 25 percent benchmark is not used, it is reasonable to assume that Plaintiff's potential future attorneys' fee places at least an additional $1,000,000 in controversy. Plaintiff's attorneys have recently advised courts in other class actions that their hourly rates are as follows:

- Lynn Toops from Cohen & Malad, LLP charged an hourly rate of $780 in 2021;
- J. Gerald Stranch from Stranch, Jennings & Garvey charged an hourly rate of $1,308 in 2023;
- Samuel J. Strauss from Turke & Strauss LLP charged an hourly rate of $700 in 2023; and
- Walter Smith from Smith & Dietrich Law Offices charged an hourly rate of $500 in 2024.[5]

35. Based on the foregoing rates, and consistent with precedent in other class actions, the preponderance of the evidence shows that attorneys' fees are likely to increase the amount in controversy by at least $1,000,000 if this case is litigated through trial, further exceeding the $5,000,000 threshold for removal under CAFA. *See, e.g.*, *Williams v. PillPack, Inc.*, No. 19-cv-05282-DGE, 2025 WL 1149710 (W.D. Wash. Apr. 18, 2025) (granting request for attorneys' fees of more than $2 million sought in part by Smith & Dietrich); *Holt v. Communityamerica Credit*

---

[5] *See* Declaration of Vanessa Soriano Power at Exhibits B-E.

NOTICE OF REMOVAL (2:25-cv-01235) - 12

1  *Union*, 2020 WL 12604384, at * (W.D. Miss. Dec. 8, 2020) (granting fee award to Cohen & Malad and Stranch, Jennings & Gravey of $1,026,145.33 on settlement amount of $3,078,436.00); *see also In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour).

36. **None of the exceptions to CAFA jurisdiction apply.** CAFA's "home-state" and "local controversy" exceptions do not apply to this removal. The "home-state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[Home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed"). Likewise, under the "local controversy" exception, at least one of the defendants must be "a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A). Nike is not a citizen of Washington, so neither of these exceptions apply. In addition, this action does not involve those claims identified in the CAFA exception found at 28 U.S.C. § 1332(d)(9).

37. Accordingly, because all CAFA requirements are met and the exceptions do not apply, this case is properly removable under CAFA.

38. Nike does not waive, and instead specifically reserves, any and all defenses and affirmative defenses to Plaintiff's Complaint.

39. If any questions arise as to the propriety of removal of this action, Nike respectfully requests the opportunity to conduct jurisdictional discovery, and to present a brief and oral argument in support of its position that this case is subject to removal.

On these grounds, Nike removes this case to the U.S. District Court for the Western District of Washington at Seattle pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 and respectfully requests that all further proceedings in this action be conducted as provided by law.

NOTICE OF REMOVAL (2:25-cv-01235) - 13

129293801.2 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

| | | |
|---|---|---|
| 1 | DATED: July 1, 2025. | STOEL RIVES LLP |

*s/Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777

*s/ Jenna M. Poligo*
Jenna M. Poligo, WSBA No. 54466

*s/ Gabrielle K. Lindquist*
Gabrielle Lindquist, WSBA No. 57177

600 University Street, Ste. 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
Email: vanessa.power@stoel.com
jenna.poligo@stoel.com
gabrielle.lindquist@stoel.com

*Attorneys for Defendant Nike, Inc.*

NOTICE OF REMOVAL (2:25-cv-01235) - 14

**CERTIFICATE OF SERVICE**

I, Rachael Cullen, hereby certify that I caused a copy of the foregoing document to be served upon counsel of record *in Ma v. Nike, Inc.*, Case No. 25-2-16073-4 KNT in the Superior Court of the State of Washington, County of King, via electronic mail and United States Postal Service First Class Mail, postage prepaid on the date indicated below:

| | |
|---|---|
| Walter Smith, WSBA #46695<br>Smith & Dietrich Law Offices, PLLC<br>1226 State Avenue N.E., Suite 205<br>Olympia, WA 98506<br>walter@smithdietrich.com | Lynn A Toops*<br>Ian R. Bensberg*<br>CohenMalad, LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, IN 46204<br>ltoops@cohenmalad.com<br>ibensberg@cohenmalad.com |
| Samuel J. Strauss, WSBA #46971<br>STRAUSS BORRELLI PLLC<br>980 N Michigan Avenue, Suite 1610<br>Chicago IL, 60611<br>sam@straussborrelli.com | J. Gerard Stranch*<br>Stranch, Jennings & Garvey, PLLC<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, TN 37203<br>gstranch@stranchlaw.com |
| Lynn A Toops*<br>Ian R. Bensberg*<br>CohenMalad, LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, IN 46204<br>ltoops@cohenmalad.com<br>ibensberg@cohenmalad.com | *Pro hac vice forthcoming.* |

*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 1st day of July 2025 at Seattle, Washington.

*s/ Rachael Cullen*
Rachael Cullen, Legal Practice Assistant
Stoel Rives LLP

CERTIFICATE OF SERVICE (2:25-cv-01235) - 1