UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARRISON MA, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br><br>Defendant. | No. 2:25-cv-01235-JLR<br><br>**DEFENDANT NIKE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**NOTE ON MOTION CALENDAR:**<br>**October 8, 2025** |

## I. INTRODUCTION

Plaintiff Harrison Ma ("Mr. Ma" or "Plaintiff") filed this putative class action against Defendant Nike, Inc. ("Nike" or "Defendant") because he allegedly received three emails from Nike advertising sales that purportedly lasted slightly longer than indicated in the subject lines of those emails. Mr. Ma does not contend that he was deceived by the statements in the subject lines or that they were in any way material. Indeed, Mr. Ma does not even allege that he read the email subject lines. He does not allege that he relied upon the emails or subject lines in making any purchase. Nor does Mr. Ma allege that he was injured by the email subject lines. Mr. Ma nonetheless brings this suit alleging strict statutory liability against Nike on grounds that Nike's

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 1

subject-line content violated Washington's Commercial Electronic Mail Act ("CEMA").[1] Mr. Ma's CEMA claim is preempted and should be dismissed.

CEMA regulates internet fraud. Mr. Ma's CEMA claim is preempted by the Controlling the Assault of Non-Solicited Pornography And Marketing ("CAN-SPAM") Act, 15 U.S.C. § 7701, *et seq*. The CAN-SPAM Act was passed by the U.S. Congress in 2003, five years after CEMA was enacted in Washington State. The CAN-SPAM Act expressly contemplated and preempts state regulations, like CEMA, that ban immaterial misstatements in a commercial email. On this basis, Mr. Ma's CEMA claim is preempted and should be dismissed.

To avoid this broad, mandatory preemption, Mr. Ma may contend that his claim falls within the "limited, narrow exception" that Congress created for state laws prohibiting "falsity or deception." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009). It does not. The Ninth Circuit has made clear that this exception applies only to claims involving "traditionally tortious or wrongful conduct," and that claims based on "immaterial inaccuracies or omissions" are preempted. *Id.* at 1062 (citation omitted). Mr. Ma's CEMA claim is not based on traditionally tortious conduct. Rather, it is based on alleged immaterial misstatements that merely reference promotions that, at most, lasted slightly *longer* than advertised. Mr. Ma has not even alleged that he read, let alone relied on or was deceived by, any of the statements identified in his First Amended Complaint. This is fatal to his claim.

Mr. Ma's attempt to circumvent preemption under the CAN-SPAM Act by asserting that "CEMA's protections do not depend on whether . . . consumers relied on any false or misleading statement contained in its subject line" (FAC ¶ 27) also fails. If Mr. Ma attempts to argue that his claim is based on allegedly "fraudulent" misstatements by Nike, that argument will fail because

---

[1] On April 17, 2025, the Washington Supreme Court issued an opinion interpreting CEMA to prohibit the use of *any* false or misleading information in the subject line of a commercial email, not just information that is false or misleading about the commercial nature of the email. *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 2

the First Amended Complaint does not meet the heightened pleading requirements of Rule 9(b). Finally, Mr. Ma also alleges a derivative claim for violation of the Washington Consumer Protection Act ("CPA") on grounds that the purported CEMA violation constitutes a *per se* violation of the CPA. Because Mr. Ma's CEMA claim fails, his derivative CPA claim also fails. The First Amended Complaint should be dismissed with prejudice.

## II. BACKGROUND

On May 29, 2025, Mr. Ma filed this putative class action in King County Superior Court. (Dkt. 1-2). Nike removed to this Court based on diversity jurisdiction and CAFA jurisdiction, *see* Dkt. 1 (Notice of Removal), and then moved to dismiss on August 6, 2025 (Dkt. 13). Rather than respond to Nike's pending Motion to Dismiss, Plaintiff filed the First Amended Complaint ("FAC") on August 27, 2025. (Dkt. 14).

The FAC alleges that Nike violated CEMA and the CPA by sending emails with subject lines containing "false or misleading" information to Washington residents, including Plaintiff. FAC ¶¶ 91-97. Mr. Ma alleges that Nike sent him three emails on August 26, 2022, November 30, 2024, and December 1, 2024, and alleges that the emails' subject lines were misleading because they "contained false statements as to the duration or availability of a promotion." *Id.* ¶¶ 73-79 (citation omitted).

More specifically, the FAC alleges that, on August 26, 2022, "Nike sent consumers a mass email with the subject line, 'Up to 50% off disappears tonight [hourglass emoji],'" but that subject line was false or misleading because "Nike intended to and did extend the 'up to 50% off' for another day." *Id.* ¶¶ 43-44. The FAC also alleges that, on November 30, 2024, "Nike sent an email with the subject line, 'Only a few hours left,'" referring to an "'up to 60% off' Black Friday sale," but that subject line "was false or misleading" because "Nike intended to and did extend the same offer for another week, until December 7." *Id.* ¶¶ 56-57. The FAC further alleges that, on December 1, 2024, "Nike sent an email with the subject line, 'Cyber Monday is here,'" but that subject line "was false or misleading" because "it implied that the offer contained in the email's

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

body was for a one-day 'Cyber Monday' event," but "Nike intended to and did extend the same offer for almost another week, until December 7." *Id.* ¶¶ 58-59.

At no point, however, does Mr. Ma allege that he read any of the email subject lines on the dates the emails were received (or even read the subject lines at any point), was deceived in any way by the subject lines, or took any action to his detriment in response. To the contrary, Mr. Ma asserts that "CEMA's protections do not depend on whether any email (really or fictively) solicited by consumers, not on whether consumers relied on any false or misleading statement contained in its subject line." FAC ¶ 27.

Exhibit A to the FAC (Dkt. 14-1) lists seven emails—including the three emails Mr. Ma says he received—which are allegedly "examples of Nike's commercial emails whose subject lines contain false or misleading statements." *Id.* ¶ 62 & Ex. A. The FAC defines the putative class as "[a]ll Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period . . . ." *Id.* ¶ 80.

The FAC differs only slightly from Plaintiff's original Complaint, and not in any way that saves it from dismissal. Nike again moves to dismiss Plaintiff's claims, and, now seeks dismissal with prejudice because Plaintiff has demonstrated an inability to remedy the deficiencies through an amendment.

### III.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), and to "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). "Where a state law claim is preempted by federal law, dismissal may be granted under Fed. R. Civ. P. 12(b)(6)." *Chao Chen v. Geo Grp., Inc.*, 287 F. Supp. 3d

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 4

150289892.3 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1158, 1163 (W.D. Wash. 2017) (citing *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)).  That is the case here.

To the extent Mr. Ma may contend his claims are based on intentional rather than inadvertent misstatements, the FAC must comply with Rule 9(b)'s heightened pleading standard. Rule 9(b) "requires more specificity," including the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  The FAC fails to meet Rule 9(b)'s heightened standard.

## IV.    ARGUMENT AND AUTHORITY

Plaintiff's CEMA claim should be dismissed because it is preempted by federal law, and his CPA claim should be dismissed because it necessarily rises and falls with his CEMA claim.  In the alternative, both claims should be dismissed because the FAC fails to comply with Rule 9(b)'s heightened pleading standards.

**A.    Plaintiff's CEMA Claim Is Preempted by Federal Law.**

**1.    Plaintiff Alleges a "Strict Liability" CEMA Claim and *Per Se* CPA Claim.**

In 1998, Washington enacted its CEMA to "address 'an increasing number of consumer complaints about commercial electronic mail.'" *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 41 (Wash. 2025) (citation omitted).  CEMA's central purpose was to help internet users avoid the inconvenience of "sifting through in-boxes cluttered by spam." *Id.*  CEMA was passed at a time when "[i]nternet access was comparatively slow and expensive" and "[c]onsumers often paid for access 'by the minute or hour.'" *Id.* (citation omitted).  The legislature was therefore "concerned about the added cost consumers faced" from having to sort through emails with subject lines containing false information and "sought to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails." *Id.* at 41, 45.  CEMA accordingly prohibits anyone from transmitting commercial email messages to email addresses held by Washington residents that

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 5

150289892.3 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

contain "false or misleading information in the subject line." RCW 19.190.020(1). The Washington Supreme Court recently adopted a broad interpretation of this statute and concluded that it prohibits the transmission of a commercial email with a subject line containing *any* false or misleading information. *Brown*, 567 P.3d at 47.

Following the Washington Supreme Court's ruling in *Brown*, Mr. Ma alleges that certain emails from Nike containing allegedly false or misleading subject lines sent to Washington citizen—regardless of whether that subject line was read or relied on—violated CEMA and are *per se* violations of Washington's CPA. FAC ¶¶ 27-28 (citing *Brown*, 567 P.3d at 44-45); *see also id.* ¶¶ 92-97, 99-107. Mr. Ma seeks to represent a putative class of Washington citizens who hold email addresses to which Nike purportedly sent such emails with subject lines that allegedly contain "false statements of fact as to the 'duration or availability of a promotion.'" *See, e.g.*, *id.* ¶¶ 79-80. Notably, the class members, like Mr. Ma, are not alleged to have read, relied on, or been in any way deceived by any of the allegedly misleading email subject lines. Mr. Ma's strict liability claims fail, however, because they are preempted by the CAN-SPAM Act.

2. **The CAN-SPAM Act Expressly Preempts Plaintiff's Strict Liability CEMA Claim.**

Under the Supremacy Clause, "state laws that conflict with federal law are 'without effect.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citation omitted). Congress may choose to "explicitly define[] the extent to which its enactments preempt state law." *Virtumundo*, 575 F.3d at 1060 (quoting *Indus. Truck Ass'n v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997)). When Congress passed the CAN-SPAM Act in 2003—five years after CEMA's enactment—it chose to expressly preempt state laws that regulate commercial email, in favor of a national standard. Congress recognized that the existing patchwork of "disparate" state laws regulating commercial email had proven unworkable:

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 6

150289892.3 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

15 U.S.C. § 7701(a)(11). Congress replaced the multitude of state laws with a national set of rules and liability standards. In so doing, it struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006); *see also Virtumundo*, 575 F.3d at 1049 ("[D]espite what Gordon and likeminded anti-spam enthusiasts might contend, the purpose of the CAN–SPAM Act was not to stamp spam out of existence. . . . [T]here are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to preserve, if not promote."). On the one hand, Congress imposed new national restrictions on commercial email, including a nationwide prohibition on commercial emails with subject lines that are "likely to mislead a recipient" about "a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2). On the other hand, Congress expressly limited who could enforce the statute, largely entrusting enforcement to government bodies. *See id.* § 7706.

To ensure no state could upend this delicate balance, Congress barred states from imposing their own sets of liability standards. That is, Congress expressly mandated that the CAN-SPAM Act would "supersede[] any statute, regulation, or rule of a State" that "expressly regulates the use of electronic mail to send commercial messages." *Id.* § 7707(b)(1). Congress utilized this expansive language to "broadly preempt state regulation of commercial e-mail with limited, narrow exception." *Virtumundo*, 575 F.3d at 1061; *see also id.* at 1063 ("It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation.").

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 7

CEMA—"Washington's statute regulating commercial e-mail messages"—fits squarely within this express preemption proviso.[2] *Id.* at 1057 (holding that the CAN-SPAM Act preempts CEMA claims). Plaintiff's CEMA claim is preempted by the CAN-SPAM Act.

### 3. The Limited, Narrow Exception to Preemption Is Reserved for Claims Based on Traditional Tort Theories Such as Fraud or Deceit—Not Strict Liability.

To avoid preemption, Mr. Ma may argue that his CEMA claim falls within a "limited, narrow exception" created by Congress for state laws based on "traditional tort theories." *Id.* at 1061-62, 1063 (citing 15 U.S.C. § 7707(b)(2)). But Mr. Ma's CEMA claim is not based on traditional tort theories like fraud or deceit. Mr. Ma has not pleaded reliance or injury—which are vital elements of such claims—to establish a CEMA violation and alleges that they are not required to assert a CEMA violation. *See* FAC ¶ 27. Nor has he pleaded "materiality"—an element that the Ninth Circuit has expressly required to invoke the narrow exception to preemption. *Id.* at 1061-62.

Both the Ninth and the Fourth Circuits have addressed the "traditional tort theory" preemption exception, and both reached the same conclusion after close analysis: only claims premised on "traditionally tortious" conduct survive preemption. *Id.* at 1062 (citation omitted). Strict liability claims, on the other hand, do not fall within this exception.

In *Omega*, the Fourth Circuit addressed whether the CAN-SPAM Act preempts claims based on the Oklahoma analogue to CEMA. 469 F.3d at 354. Like CEMA, the Oklahoma statute "reach[ed] beyond common law fraud or deceit." *Id.* at 353 ("By its terms, the statute is not limited

---

[2] Plaintiff may argue that a state court's interpretation of a state statute can save it from CAN-SPAM preemption. While it is true that "the Washington Legislature or state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation," *Virtumundo*, 575 F.3d at 1059, Nike does not challenge the Washington Supreme Court's recent interpretation of CEMA in *Brown* in this Motion, *see, e.g.*, *Brown*, 567 P.3d at 45 (explaining that CEMA "targets a specific deceptive commercial practice: sending Washington residents commercial e-mails that contain 'false or misleading information in the subject line[s].'" (brackets in original; citation omitted)). To the contrary, it is Plaintiff's attempt to contort CEMA into a strict liability statute that is preempted by the CAN-SPAM Act.

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 8

to inaccuracies in transmission information that were material, led to detrimental reliance by the recipient, and were made by a sender who intended that the misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth."). The Fourth Circuit concluded that the plaintiff's claims, premised on "immaterial errors," were preempted. *Id.* The *Omega* court narrowly construed the preemption exception as being reserved for claims based on "falsity or deception":

> [T]he pre-emption clause links "falsity" with "deception"—one of the several tort actions based upon misrepresentations. Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, at 726–27 (5th ed. 1984) (defining deceit as species of false-statement tort); Restatement (Second) of Torts § 525 [1977] (describing elements of deceit). This pairing suggests that Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort.

*Id.* at 354. "Torts involving misrepresentations"—in particular, common law fraud and deceit, which are specifically referenced in *Omega*—require materiality, reliance, actual injury, and deceptive intent. *Id.*; *see* Restatement (Second) of Torts § 525 (stating that a claim for "deceit," *i.e.*, "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss").

The Fourth Circuit also explained how its narrow reading of the exception was further supported by "[o]ther sections of the CAN-SPAM Act," which contain a materiality component. *Omega*, 469 F.3d at 354. Indeed, if claims premised on "bare error" survived preemption, it would "upset the Act's careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Id.* And expanding the exception to include "strict liability" claims premised on "insignificant inaccuracies" would "undermine[] to the point of near-irrelevancy" the "national standard" that Congress created and its "plain intent." *Id.* at 355. Indeed, "[t]he strict liability standard imposed by a state such as Oklahoma would become a de facto national standard, with all the burdens that imposed [on companies], even though the CAN–SPAM Act indicates that Congress believed a less demanding standard would best balance the competing interests at stake."

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 9

1  *Id.* at 356. By contrast, limiting the exception to "more narrowly tailored causes of action" based
2  on traditional fraud or deceit would "effectively respond to the obstacles to 'convenience and
3  efficiency' that unsolicited messages present." *Id.* at 355 (citation omitted).

4  Three years later, in *Virtumundo*, the Ninth Circuit "independently analyzed the CAN–
5  SPAM Act's text, structure, and legislative purpose" and "reach[ed] the same conclusion as
6  the . . . Fourth Circuit." 575 F.3d at 1061. The Ninth Circuit agreed that the preemption exception
7  Congress created is "narrow" and "limited" to claims involving "traditionally tortious or wrongful
8  conduct." *Id.* at 1061-62 (citation omitted). Accordingly, the Ninth Circuit held that only claims
9  akin to a "tort action based on misrepresentations" survive preemption. *Id.* at 1062. The Ninth
10 Circuit agreed with the Fourth Circuit that a "contrary reading" of the statute would "turn an
11 exception to a preemption provision into a loophole so broad that it would virtually swallow the
12 preemption clause itself." *Id.* at 1061 (citation omitted). Accordingly, the Ninth Circuit held that
13 CEMA claims based on "***immaterial*** inaccuracies or omissions" are preempted. *Id.* at 1062
14 (emphasis added); *id.* at 1065 (requiring misrepresentation of "something of material importance"
15 (citation omitted)); *id.* at 1061 (stressing that "materiality component comported with the policy
16 pursued by the federal legislation as a whole"). In other words, state anti-spam laws that create
17 liability for immaterial inaccuracies or omissions are preempted by the CAN-SPAM Act.

18 Before *Virtumundo*, the district court in *Kleffman v. Vonage Holdings Corp.* similarly
19 concluded that the plaintiffs' claims under a California law regulating commercial emails were
20 "clearly preempted." No. CV 07-2406GAFJWJX, 2007 WL 1518650, at *3 (C.D. Cal. May 23,
21 2007), *aff'd*, 387 F. App'x 696 (9th Cir. 2010). "Though Congress did not define the terms 'falsity'
22 or 'deception'" in the preemption exception, *Kleffman* found that "it is clear that it meant these
23 terms to refer to traditional, tort-type concepts." *Id.* The *Kleffman* court stressed Congress's
24 concern that expanding the exception to insulate claims in which there was no actual, detrimental
25 reliance or injury would result in the very "patchwork of state laws" Congress sought to avoid. *Id.*
26 (citing 15 U.S.C. § 7701(a)(11)). By contrast, "[s]tatutes that prohibit fraud and deception in e-

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10

mail do not raise the same concern" because they target misconduct that, under longstanding tort theories, a "legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id.* (quoting S. Rep. No. 108–102, at 21–22 (2003)). Therefore, Congress "left states room only to extend their *traditional* fraud prohibitions to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such well-established prohibitions." *Id.* (emphasis in original).

### 4. Plaintiff's Strict Liability CEMA Claim Is Not Based on Fraud or Deceit and Is Therefore Preempted.

Here, Plaintiff pleads the very kind of strict liability theory under CEMA that Congress preempted and *Virtumundo* and *Omega* rejected—without alleging any of the elements of a traditional fraud or deceit claim. Thus, as pled in the FAC, Plaintiff's attempt to invoke CEMA is preempted by the CAN-SPAM Act.

*First*, whereas fraud or deceit requires a materially false statement, *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167, 273 P.3d 965 (2012), the FAC does not plausibly allege that any purported misstatement was material to Plaintiff. Nowhere does Mr. Ma allege that he failed to receive any discount, sale price, or other advertised promotion. Instead, Plaintiff merely alleges that Nike's sales ultimately lasted for a longer period of time than initially indicated. FAC ¶¶ 37-62. But the FAC "does not allege that this information [wa]s material" to any identified purchase decision by Plaintiff, *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009)—a prerequisite to establish fraud or deceit, *Elcon*, 174 Wn.2d at 167 (finding no "material[ity]" because alleged misstatements were not material to the plaintiff); *Martin v. Miller*, 24 Wn. App. 306, 309, 600 P.2d 698 (1979) (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant"); *Brummett v. Washington's Lottery*, 171 Wn. App. 664, 678, 288 P.3d 48 (2012) (advertisement claiming tickets were "going fast" was not "something of material importance" (citation omitted)).

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 11

The Ninth Circuit has made clear that the CAN-SPAM Act preempts claims premised on immaterial inaccuracies, like those Plaintiff asserts here. *See Virtumundo*, 575 F.3d at 1065 (requiring "something of *material* importance" (emphasis in original) (citation omitted)). Plaintiff does not even plausibly plead a theory of liability based on material misstatements (or any other element of a traditional fraud or deceit claim), and that fact alone means his claim is preempted. *Id.* at 1062 ("Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions.").

**Second**, Plaintiff does not allege that he relied upon Nike's purportedly misleading email subject lines in any way. *See Isomedia*, 2009 WL 10676391, at *4. Plaintiff's bare allegation that he "received" Nike's emails "is not the same as an allegation that [he] acted in reliance upon the information contained in it." *Id.*; *see also* FAC ¶¶ 76-78.

**Third**, Plaintiff does not even allege that he read—let alone suffered an actual injury from—the alleged misstatements in the subject lines of Nike's emails. He does not allege, for example, that he made any shopping decision to his detriment based on the promotional period advertised, or that he even opened any email. Nor is it plausible that Plaintiff suffered actual injury merely because a sale ultimately lasted for a longer period than advertised.

**Fourth**, the FAC also does not plausibly allege that Nike knew the subject lines of the emails sent were "misleading" on the date sent, as required to establish traditional fraud or deceit. *See Isomedia*, 2009 WL 10676391, at *4.

Overall, Plaintiff does not plausibly allege that Nike "knew the subject lines were misleading, that [Nike] intended the e-mails to be deceptive, or that Plaintiff[] took any action in reliance on [Nike's] alleged misrepresentations." *Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2006 WL 3873368, at *3 (W.D. Wash. Dec. 8, 2006). Because Plaintiff has not pleaded that Nike acted with fraud or deceit, his CEMA claim, as pleaded in the FAC, is preempted by the CAN-SPAM Act. *See id.*; *Kleffman*, 2007 WL 1518650, at *3 (explaining that claims are "clearly

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 12

150289892.3 0017531-00353

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

preempted" because plaintiff "does not allege a traditional tort theory at all, or even that he was at any point mislead by any of the eleven Vonage emails"). The CEMA claim must be dismissed.

**B.    The FAC Violates Rule 9(b)'s Heightened Pleading Standard.**

To circumvent preemption, Plaintiff may try to argue that his claim is based in fraud or deceit. But that argument fails because the FAC does not comply with Rule 9(b). *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008) ("Rule 9(b) may apply to claims—that although lacking fraud as an element—are 'grounded' or 'sound' in fraud." (citation omitted)).

Notably, Plaintiff does not plead—much less with the particularity required by Rule 9(b)—that he relied upon, and suffered actual injury as a result of, the alleged misstatements in the subject lines of Nike's emails. *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (holding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (finding complaint "failed to plead reliance with particularity"). Nor does Plaintiff plead specific facts establishing that any alleged misstatement was material to him or anyone else. *See Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting defendant judgment on the pleading because plaintiff failed to plead with sufficient particularity any "material representation to him that he had right to and did rely upon to his detriment"); *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, No. C05-0420L, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaim that failed to "adequately ple[a]d materiality of the omission" or "the nature of its damages," which "must be plead[ed] with particularity").

To the extent Plaintiff contends he needs discovery to comply with Rule 9(b), that is not the way the law works, nor would it make any sense as Plaintiff should be in possession of the facts demonstrating the materiality of any alleged misstatements. "The Ninth Circuit has held that a plaintiff may not use discovery to cure a 'facially insufficient pleading.'" *Derakhshan v. Wells Fargo Bank, N.A.*, No. 2:23-cv-05900-MRA-PD, 2024 WL 5317248, at *2 (C.D. Cal. Dec. 17, 2024) (quoting *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021)). Indeed, such

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 13

1  an approach would be "directly contrary to the purpose of Rule 9(b)," which requires that Plaintiff demonstrate "some substance to [his] claim of fraud before subjecting a defendant to the rigors of the discovery process." *Periguerra v. Meridas Cap., Inc.*, No. C 09-4748 SBA, 2010 WL 395932, at *5 (N.D. Cal. Feb. 1, 2010) (citing *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)); *see also ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (requiring compliance with Rule 9(b) "before access to the discovery process is granted" (citation and emphasis omitted)).

Thus, even if Plaintiff attempts to circumvent preemption by arguing that his CEMA claim is based in fraud or deceit, the FAC should still be dismissed.

**C.  Plaintiff's Derivative CPA Claim Also Fails.**

Because Mr. Ma's CEMA claim fails as a matter of law, his *per se* CPA claim that is based entirely on the alleged CEMA violation is "likewise inadequate" and "properly dismissed." *Virtumundo*, 575 F.3d at 1065; *Taie v. Ten Bridges LLC*, 704 F. Supp. 3d 1147, 1154 (W.D. Wash. 2023) (dismissing CPA claim where underlying statutory claim failed).

**D.  Leave to Amend Would Be Futile.**

The FAC should be dismissed with prejudice as any further amendment would be futile. Nike moved to dismiss Plaintiff's original complaint on nearly identical grounds on August 6, 2025. *See* Dkt. 13. . Plaintiff has been aware of Nike's position since that date, but did not plead any additional facts that would save his claims from dismissal. If Plaintiff had any additional facts or allegations to add to avoid Nike's preemption argument, he undoubtedly would have pleaded them when he filed the FAC on August 27, 2025. He did not do so. Accordingly, any request for further leave to amend to avoid Nike's preemption argument would be futile. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (affirming dismissal without leave to amend where "any further amendment to the complaint would likely prove futile"); *see id.* (explaining that one of the factors courts consider when deciding whether to grant leave to amend is "whether plaintiff has previously amended his complaint"); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 14

F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Plaintiff's motion to dismiss should be dismissed with prejudice.

## V. CONCLUSION

For all the foregoing reasons, Nike respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

I certify that this memorandum contains 4,895 words, in compliance with the Local Civil Rules.

DATED: September 10, 2025.

STOEL RIVES LLP

*s/Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777
Jenna M. Poligo, WSBA No. 54466
Gabrielle Lindquist, WSBA No. 57177
600 University Street, Ste. 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
Email: vanessa.power@stoel.com
jenna.poligo@stoel.com
gabrielle.lindquist@stoel.com

*Attorneys for Defendant Nike, Inc.*

NIKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 15

150289892.3 0017531-00353

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*