UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARRISON MA, | CASE NO. C25-1235JLR |
| Plaintiff, | ORDER |
| v. | |
| NIKE, INC., | |
| Defendant. | |

## I.  INTRODUCTION

Before the court is Defendant Nike, Inc.'s ("Nike") motion to dismiss Plaintiff Harrison Ma's first amended complaint. (*See* MTD (Dkt. # 15); Reply (Dkt. # 18); *see also* Am. Compl. (Dkt. # 14).) Mr. Ma opposes the motion. (Resp. (Dkt. # 17).) The court has reviewed the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Nike's motion.

---

[1] Nike requests oral argument; Mr. Ma does not. The court concludes that oral argument is not necessary to decide the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 1

## II.  BACKGROUND

This case arises from Nike's alleged violation of Washington's Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("CPA") in which Nike sent commercial e-mails to Mr. Ma containing false or misleading information in the subject line. (*See generally* Am. Compl.)  Mr. Ma represents that he is a resident of Washington who received multiple commercial e-mails from Nike between 2022 and 2024 that falsely claimed that Nike was offering discounts or sales that expired after a specific period of time. (*See, e.g.*, *id.* ¶¶ 10, 39, 44-59.)  He asserts that Nike sent the e-mails with the intent to later extend the advertised sales and discounts beyond their stated durations. (*See id.*)

According to Mr. Ma, the e-mails were part of a broader effort by Nike to "manipulate consumer choice" by creating "a false sense of urgency[.]" (*See id.* ¶¶ 29, 37.)  For example, on June 10, 2022, Mr. Ma received an e-mail from Nike with the subject line, "2 days only: Save up to 50%[.]" (*Id.* ¶ 38.)  After this offer purportedly ended, however, Nike sent another e-mail extending the offer through June 18, 2022. (*Id.* ¶¶ 39-41; *see also id.* ¶¶ 42-62 (describing other allegedly misleading e-mail messages sent by Nike).)  Mr. Ma does not allege that he read the e-mails or took any action because of the e-mails. (*See generally id.*).

On May 29, 2025, Mr. Ma filed a proposed class action complaint against Nike in King County Superior Court. (*See* NOR (Dkt. # 1) at 2; Compl. (Dkt. # 1-2).)  On July 1, 2025, Nike removed the case to this District pursuant to diversity jurisdiction. (*See* NOR); 28 U.S.C. § 1332.  On August 27, 2025, after Nike moved to dismiss his

complaint, Mr. Ma amended his complaint. (Am. Compl.; *see generally* Dkt.) Mr. Ma raises claims against Nike for violations of CEMA, RCW 19.190.020, and the CPA, RCW 19.86.020. (Am. Compl. ¶¶ 91-107.)

On September 10, 2025, Nike moved to dismiss Mr. Ma's amended complaint. (MTD.) Nike's motion is now fully briefed and ripe for decision.

### III.    DISCUSSION

The court first discusses the relevant standard of review and then considers the parties' arguments.

**A.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the allegations in the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The court "is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998) (citation omitted).

B.     **Motion to Dismiss**

Nike urges the court to dismiss Mr. Ma's first amended complaint because (1) his CEMA claim is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, 15 U.S.C. § 7701, *et seq.*, (2) the first amended complaint fails to comply with Rule 9(b)'s heightened pleading standard, and (3) his CPA claim is derivative of his preempted CEMA claim. (*See generally* MTD.)  The court addresses each argument in turn.

    1.   <u>Mr. Ma's CEMA claim is not preempted by the CAN-SPAM Act.</u>

In 1998, Washington state enacted CEMA which in pertinent part, prohibits sending commercial e-mail messages that contain "false or misleading information in the subject line" to Washington residents.  RCW 19.190.020(1)(b); *see also Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (holding that RCW 19.190.020(1)(b) bars sending Washington residents "commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails.") (emphasis in original).  A violation of CEMA is a *per se* violation of the CPA.  *See* RCW 19.190.030(1).

In 2003, Congress passed the CAN-SPAM Act.  15 U.S.C. § 7701, *et seq*.  The CAN-SPAM Act expressly preempts certain state-law claims while expressly exempting others from preemption via a "savings" clause:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.*

15 U.S.C. § 7707(b)(1) (emphasis added).  Thus, the CAN-SPAM Act preempts any state statute that regulates the use of e-mail to send commercial messages, unless the statute bars "falsity or deception" in commercial e-mails.  15 U.S.C. § 7707(b)(1).

A state law that prohibits "*fraudulent or deceptive* headers, subject lines, or content in commercial e-mail[s] would not be preempted" by the CAN-SPAM Act.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1062 (9th Cir. 2009) (emphasis in original) (quoting S. Rep. No. 108-102, at 21).  Because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]"  *Harrington v. Vineyard Vines, LLC*, --- F. Supp. 3d ---, No. C25-1115TSZ, 2025 WL 3677479, at *1 (W.D. Wash. Dec. 18, 2025).  In *Brown*, the Washington Supreme Court held that "representations of fact–like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts" that Washington residents rely upon in their consumer decision-making process are subject to CEMA's subject-line provision.  *Brown*, 567 P.3d at 47.  Here, Mr. Ma alleges with particularity a pattern of Nike sending Washington residents commercial e-mails with subject lines containing allegedly false or misleading information regarding the duration or availability of sales promotions, falling directly under CEMA's subject-line provision which fits under the rights reserved to states within the CAN-SPAM Act's savings clause.

Nike relies heavily on *Gordon v. Virtumundo, Inc.* to argue that Mr. Ma's CEMA claim, as pled in the first amended complaint, falls under the CAN-SPAM Act's express preemption clause.  (*See* MTD at 2, 6-8; *see also* Reply at 2-3.)  *Virtumundo*, however,

dealt with commercial e-mails with header information that misrepresented the senders' identity. *Virtumundo*, 575 F.3d at 1049-50; *see id*. at 1063-64 (holding that "fanciful domain names" did not rise to the level of "falsity or deception" within the meaning of the preemption clause's exception.). In direct contrast to the instant matter, the plaintiff in *Virtumundo*, "failed to identify or describe any specific e-mail or subject line text." *Id*. at 1058; (*cf.* Am. Compl. ¶¶ 38-62). Thus, Nike's reliance on *Virtumundo* is misplaced.

Additionally, Nike asserts that Mr. Ma's CEMA claim is preempted because the claim is not based on traditional tort theories like fraud or deceit and because Mr. Ma has not pleaded reliance, injury, or materiality. (MTD at 8.) The court agrees with Mr. Ma that by their plain terms, "falsity" and "deception" do not equate to common law fraud and Congress would have explicitly used the language of fraud in the CAN-SPAM Act if it intended to limit the exception to fraud alone. (Resp. at 3-4.); *see Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) ("Congress . . . is certainly familiar and with the word 'fraud' and choose not to use it; the words 'falsity *or* deception' suggest broader application . . . Congress utilized the word 'fraud' in the very next subsection but not in the savings clause.") (citation omitted). *Virtumundo* did not clearly resolve whether a plaintiff could only plead "falsity or deception" by pleading reliance on damages under state statutes. *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503SC, 2010 WL 1267763, at *10-11 (N.D. Cal. Apr. 1, 2010); *see id*. at 11 ("The explicit language of the preemption clause betrays no intention by Congress to limit state regulation to the simple codification of common law fraud in its purest form."). District courts have agreed on a broader interpretation that reliance

and damages are not necessary for the preemption clause to apply. *See Wagner v. Spire Vision*, No. C13-04952WHA, 2014 WL 889483, at *3 (N.D. Cal. Mar. 3, 2014) (compiling cases so holding); *see also Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) ("Neither the required elements of a claim under the CAN-SPAM Act, nor the required elements of a claim under CEMA, include all the elements of common law fraud.").

Reading the phrase "falsity or deception" as encompassing something broader than common law fraud also finds support in the legislative history. The Senate Report accompanying the legislation stated that the CAN–SPAM Act would "supersede State and local statutes . . . that expressly regulate the use of e-mail to send commercial messages except for statutes . . . prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted." S. Rep. No. 108-102, at 21-22 (emphasis added). The Senate Report further explains that although the purpose of the CAN-SPAM Act was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id*. The CAN-SPAM Act prohibits "only *deceptive* subject line headings or *materially* false or *materially* misleading header information." *Virtumundo*, *supra*, 575 F.3d at 1062 (emphasis added) (internal quotation marks omitted); *see also Subscriberbase Inc.*, 2010 WL 1267763, at *12 (noting that the difference between "deception in the strict 'fraud' sense, and deception without reliance and damages, is merely the difference between actual and

ORDER - 7

attempted fraud. Once an advertiser makes a material, intentional misrepresentation, whether the elements of reliance and damages manifest in any instance depends upon the naiveté, vulnerability, or circumstance of the recipient."). Mr. Ma plausibly alleges that Nike's practice of deceptive subject-line e-mails misleads recipients as to the availability and duration of the sales promotion, affecting consumer behavior. Construing the amended complaint in the light most favorable to Mr. Ma, the court concludes that Mr. Ma's CEMA claim is not preempted by the CAN-SPAM Act.

    2. <u>Mr. Ma's amended complaint satisfies Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.</u>

Next, Nike contends that although Mr. Ma may attempt to circumvent preemption by alleging that his CEMA claim is based in fraud or deceit, dismissal is nevertheless required because the first amended complaint fails to comply with Rule 9(b)'s heightened pleading standard. (MTD at 13-14.) Specifically, Nike asserts Mr. Ma fails to plead with particularity that he relied upon and suffered an actual injury as a result of the alleged misstatements in the subject lines of Nike's e-mails. (*Id*.) Mr. Ma contends that he "need not and does not allege fraud" and rather merely has to allege "falsity or deception" but regardless his first amended complaint includes the necessary components to satisfy Rule 9(b). (Resp. at 10.)

Generally, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *See* Fed. R. Civ. P. 8(a)(1)-(2). "In alleging fraud or mistake," however, "a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

To satisfy Rule 9(b), "allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). A plaintiff must allege the "who, what, when, where, and how" of the alleged misconduct, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). Rule 9(b) may apply to claims that are "grounded" or "sound" in fraud, even if fraud is not an element of the claim. *Vess*, 317 F.3d at 1103-04.

Here, even if Rule 9(b) applies, Mr. Ma meets the heightened pleading standard by pleading the who, what, where, why, and how of his claim, along with setting forth what was false or misleading about the subject lines in Nike's emails. (*See* Am. Compl. ¶¶ 4-6, 32-34, 37, 43-59, 73, 76-79.) Specifically, Mr. Ma plausibly alleges that on several occasions between 2022 and 2024, Nike sent a Washington resident commercial e-mails with subject lines containing allegedly false or misleading information regarding the duration or availability of sales promotions. (*See, e.g.*, *id.* ¶¶ 39, 44-59.) Thus, the court finds that Mr. Ma has satisfied Rule 9(b)'s particularity requirements.

Consequently, because CEMA is not preempted by the CAN-SPAM Act and because Mr. Ma satisfies Rule 9(b)'s particularity requirements, the court concludes that Mr. Ma has plausibly alleged a violation of CEMA.

3. Mr. Ma sufficiently states a derivative CPA claim.

Because the court denies Nike's motion to dismiss Mr. Ma's CEMA claim, the court similarly denies its motion to dismiss Mr. Ma's derivative CPA claim.

## CONCLUSION

For the foregoing reasons, the court DENIES Nike's motion to dismiss (Dkt. # 15).

Dated this 14th day of January, 2026.

JAMES L. ROBART
United States District Judge